# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CLINICAL SOLUTIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:16-cv-00196 |
| ) | Judge Aleta A. Trauger |
| PHYSICIANS PLAN RX, LLC ) | |
| and DAVID GRIMM, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court are defendant Physicians Plan Rx, LLC's Motion to Dismiss or Stay (Docket No. 11) and defendant David Grimm's Motion to Dismiss (Docket No. 13), to which Clinical Solutions, LLC, has filed a combined Response (Docket No. 15), and the defendants have filed a joint Reply (Docket No. 21). Also pending is Clinical Solutions, LLC's Motion to Amend Its Complaint (Docket No. 23), to which the defendants have filed a Response (Docket No. 24). For the reasons discussed herein, Physicians Plan Rx, LLC's motion will be granted and all claims against Physicians Plan Rx, LLC, will be dismissed, Clinical Solutions, LLC's motion will be granted, and Grimm's motion will be denied without prejudice as moot. The court's consideration of Clinical Solutions' claims premised on piercing the corporate veil will be stayed pending the result of arbitration, but its consideration of all claims against Grimm directly in his personal capacity will proceed.

## BACKGROUND

Clinical Solutions, LLC, ("Clinical Solutions") is a Tennessee limited liability company that dispenses pharmaceuticals for correctional facilities. (Docket No. 1 ¶¶ 1, 6.) Physicians Plan Rx, LLC, ("Physicians Plan") is a South Carolina limited liability company that – at least

1

formerly – dispensed pharmaceuticals to physicians. (*Id.* at ¶¶ 2, 8.) David Grimm was, at times relevant to this case, the CEO and president of Physicians Plan, as well as a proponent of the business venture that would become Physicians Plan, in the period before Physicians Plan itself was duly formed. (*Id.* at ¶¶ 9–10.)

In 2012, Clinical Solutions CEO Christi Thornberry met Grimm, and the two began discussing the possibility of working together to supply pharmaceuticals to physicians. (*Id.* at ¶¶ 7, 11). At the time, Grimm was a member of another pharmaceutical supply venture, PrimaryRx, but PrimaryRx was allegedly in the process of being forced to close by the Drug Enforcement Agency. (*Id.* at ¶ 12.) Clinical Solutions suggests that Grimm was under pressure from another PrimaryRx member, then-Speaker of the South Carolina House of Representatives Bobby Harrell, to buy out Harrell's share of the troubled company. (*Id.* at ¶¶ 13–14.)

Grimm and Thornberry settled on a plan to form a joint venture between Clinical Solutions and a new company, to be formed by Grimm. Clinical Solutions would provide Grimm $100,000 in capital for the venture, which Clinical Solutions characterizes as being paid in exchange for Grimm's established book of physician business from his time with PrimaryRx. (*Id.* at ¶ 16.) Grimm's new entity would not contribute financially to the joint venture. (*Id.* at ¶ 21.) On March 27, 2013, Grimm and Thornberry executed a joint venture agreement memorializing the agreed-upon terms. According to Grimm's signature block and the agreement's opening paragraph, he signed on behalf of "Physicians Plan Rx, LLC." (Docket No. 11-1 at 1, 5.) Allegedly unbeknownst to Thornberry, however, Physicians Plan Rx, LLC, did not exist yet: its formation would have an effective date of April 19, 2013 – twenty-three days after Grimm signed.[1] (Docket No. 1 ¶ 20.)

---

[1] In South Carolina, "the existence of a limited liability company begins when the articles of organization are filed." S.C. Code Ann. § 33-44-202.

2

Pursuant to the joint venture agreement, Clinical Solutions was to "package generic drugs for sale to physician clinics, secur[e] the FDA registrations to do so[,] and maintain[] the operations [of the joint venture] in a compliant manner," while Physicians Plan would "maintain current client relationships, develop additional relationships, perform all administrative duties attendant with the joint venture, . . . and use Clinical Solutions as the exclusive vendor for all medications to states" where Clinical Solutions had necessary bonds and licenses. (Docket No. 11-1 at 2.) The agreement provides that it "will be governed by the laws of the State of Tennessee without regard for conflicts of laws principles," and that "[e]ach Joint Venturer . . . expressly consents to the personal jurisdiction of the state and federal courts located in the state of Tennessee" for any lawsuit concerning, arising out of, or relating to the joint venture. The agreement's arbitration clause, however, provides that "[a]ny controversies or disputes arising out of or relating to this Agreement shall be resolved by binding arbitration in accordance with the then-current Commercial Arbitration Rules of the American Arbitration Association." (Docket No. 11-1 at 4–5.)

According to Clinical Solutions, the joint venture quickly failed to meet its expectations, with Physicians Plan first providing Clinical Solutions with less business than expected and then, after less than a year, ceasing all referrals to Clinical Solutions and abandoning the venture altogether. (Docket No. 1 ¶¶ 28–29.) Clinical Solutions alleges, on information and belief, that Grimm, having secured the $100,000 contribution, simply moved on to another joint venture to provide similar services in concert with another individual or entity. (*Id.* at ¶ 30.) Physicians Plan counters that Clinical Solutions failed to satisfy its obligations under the joint venture agreement by failing to secure appropriate FDA registrations, maintain its operations in a compliant manner, or make correct deliveries of its products. (Docket No. 9 at 9–10.)

3

Physicians Plan cites in particular Clinical Solutions' shipment of medication without an expiration date, use of illegible labels, and preparation of a shipment to a state in which Clinical Solutions was unlicensed, as well as its failure, after several months, to obtain needed state licenses. (*Id.*) Physicians Plan claims, moreover, that the joint venture agreement terminated by its own terms when an unrelated entity acquired a majority interest in Physicians Plan and that Clinical Solutions, in violation of its wind-up obligations, has improperly retained software that Physicians Plan acquired for it as part of the joint venture. (*Id.* at 11.)

On February 28, 2016, Clinical Solutions filed its Complaint in this matter, pleading claims of breach of contract and of the duty of good faith and fair dealing, unjust enrichment, fraudulent and/or negligent misrepresentation, and breach of fiduciary duty and duty of loyalty. (Docket No. 1 ¶¶ 32–53.) In its Answer, Physicians Plan pled a conditional counterclaim against Clinical Solutions for breach of contract. (Docket No. 9 at 9–11.) Contemporaneously with its Answer, Physicians Plan filed a Motion to Dismiss or Stay, challenging the court's subject matter jurisdiction in light of the arbitration clause of the joint venture agreement (Docket No. 11), and Grimm filed a Motion to Dismiss under Rules (12)b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (Docket No. 13). Clinical Solutions filed a Response to the Motions (Docket No. 15) and also sought leave from the court to amend its Complaint to make minor additions to the language of its allegations and add causes of action for piercing the corporate veil and interference with contract against Grimm (Docket Nos. 23 & 23-1). Physicians Plan opposes the Motion to Amend as futile. (Docket No. 24.)

## ANALYSIS

### I. Motion to Stay or Dismiss Pending Arbitration

Physicians Plan moves the court to dismiss the claims against it or stay the court

proceedings based on the arbitration clause in the joint venture agreement.[2] Clinical Solutions disputes that the arbitration clause presents any obstacle to the court's consideration of its claims, both because the clause is generally unenforceable and because Physicians Plan is not a party entitled to invoke it.

### A. Legal Standard

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, where a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and to stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). There is a strong presumption in favor of arbitration under the FAA, *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003), as a result of which any doubts regarding arbitrability must be resolved in favor of arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). If the existence of a valid and applicable arbitration agreement is not "in issue" – that is, the existence of a valid and applicable arbitration clause is clear and not subject to reasonable dispute – the court must allow for arbitration of the matter. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). There are, therefore, two common ways to challenge a motion to enforce an arbitration clause – challenging its validity and challenging its applicability to the dispute at hand.

A party opposing arbitration on validity grounds must focus on those ordinary defenses to

---

[2] It is somewhat unclear, from Physicians Plan's motion, what relief it actually seeks. Although the motion first refers to the possibility of the court's dismissing "this action," the motion ultimately requests only that the court "dismiss the claims of plaintiff *against Physicians Plan Rx, LLC* based on the arbitration agreement or, alternatively, stay this matter pending arbitration." (Docket No. 11 at 1 (emphasis added).) The court therefore reads Physicians Plan's motion as only seeking dismissal of claims against it, and not claims against Grimm. Though Grimm does seek dismissal of the claims against him in his own right, he does not rely on the arbitration agreement in so doing. (Docket No. 13.)

5

contract formation (such as fraud and duress) that would render the arbitration clause, not the contract itself, invalid. *Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 488 (6th Cir. 2002). That is, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006). An arbitration agreement may be voided for the same reasons for which any contract may be invalidated under state law, "provided the contract law applied is general and not specific to arbitration clauses." *Fazio*, 340 F.3d at 393.

A party challenging application of an arbitration clause on the ground that it does not apply to the case at hand must demonstrate that the particular dispute at issue falls outside the "substantive scope" of the arbitration clause. *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 813 (6th Cir. 2008). "Despite this strong presumption in favor of arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'" *Id.* (quoting *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005).

**B. Enforceability**

Clinical Solutions argues that the arbitration clause is unenforceable because Grimm "fraudulently induced [Clinical Solutions] to enter into the [agreement] through fraudulent misrepresentations as to the party with whom [Clinical Solutions] was allegedly contracting, Mr. Grimm's motive, and Mr. Grimm's intent to perform." (Docket No. 15 at 13–14.) Under Tennessee law, "fraud in the underlying transaction" does indeed "render[] a contract clause . . . unenforceable." *Overton v. Westgate Resorts, Ltd.*, No. E2014-00303-COA-R3-CV, 2015 WL 399218, at *12 (Tenn. Ct. App. Jan. 30, 2015) (citing *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 631 (Tenn. Ct. App. 2000)), *app. perm. to appeal denied* (June 15, 2015), *cert. denied*, 136 S. Ct.

6

486 (2015). All of the alleged fraudulent actions Clinical Solutions has raised, however, could be directed not merely at the arbitration clause, but at the entire joint venture agreement itself. "[I]f the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the [FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract *generally*." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) (emphasis added). The question of whether Grimm's representations rendered the joint venture agreement unenforceable, then, is one that should be considered in the first instance through the arbitration process itself. Clinical Solutions' fraud allegations, therefore, present no obstacle to Physicians Plan's motion.

### C. Scope of the Agreement

Clinical Solutions argues next that Physicians Plan cannot avail itself of the arbitration clause of the joint venture agreement because Physicians Plan, by virtue of not having existed when the agreement was formed, is not a party to the agreement and, therefore, falls outside its scope. Physicians Plan counters that, whatever its status was on the date the agreement was signed, both Physicians Plan and Clinical Solutions eventually ratified the contract by undertaking performance thereof, and Physicians Plan is therefore entitled to rely on the arbitration clause just as it would as an original signatory.

Tennessee courts have recognized as a "fundamental principle of agency law . . . that '[a] principal is [not bound] by contracts made by a person not his agent, . . . which he has not ratified and is not estopped to deny.'" *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269–70 (Tenn. 2001) (quoting *Bells Banking Co. v. Jackson Ctr., Inc.*, 938 S.W.2d 421, 425 (Tenn. Ct. App. 1996)). The natural corollary of that proposition is that the promoter of a

7

proposed entity cannot bind that entity to an agreement before the entity itself exists to grant him the authority to do so. *See, e.g.*, *Equitec Real Estate Inv'rs Fund XII v. Poplar Pike, Inc.*, No. 02A01-9506-CH-00127, 1996 WL 460269, at *8 (Tenn. Ct. App. Aug. 15, 1996) (vacating judgment against corporation based on pre-incorporation contract).

Simply because a business entity, once duly formed, is not *automatically* subject to the contracts executed by its promoters, however, does not mean that it can never be made subject to such agreements. "American courts generally hold that a contract made by the promoters of a corporation on its behalf may be adopted, accepted or ratified by the corporation when organized, and that the corporation is then liable, both at law and in equity, on the contract itself . . . ." *Crye-Leike Realtors, Inc. v. WDM, Inc.*, No. 02A01-9711-CH-00287, 1998 WL 651623, at *4 (Tenn. Ct. App. Sept. 24, 1998). "Ratification is the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who assumed to act as his agent without authority to do so." *Bells Banking Co.*, 938 S.W.2d at 427. "In order for a ratification to occur, the corporation, having full knowledge of the facts, must accept the benefits of the promoter's contract. Moreover, the corporation, either by the circumstances or by its affirmative election, must indicate an intention to adopt the contract as its own." *Crye-Leike,* 1998 WL 651623, at *3 (citations omitted).

Clinical Solutions' own allegations, taken as true, confirm that Physicians Plan ratified the joint venture agreement. Clinical Solutions concedes that "Physicians Plan sent . . . orders to Clinical Solutions to fill" and that "Clinical Solutions . . . packaged and delivered the generic drugs to fill the orders." (Docket No. 1 ¶¶ 27–28.) These allegations establish Physicians Plan's acceptance of the benefits of the joint venture agreement. Clinical Solutions has not alleged any way in which Physicians Plan lacked the full knowledge necessary to ratify the contract – to the

contrary, Clinical Solutions' theory of the case suggests that Grimm's knowledge should be imputed to the entity. (*See* Docket No. 23-1 ¶¶ 57–58 (alleging, in proposed Amended Complaint, that Grimm was Physicians Plan's sole member and Physicians Plan was an alter ego of Grimm).) Because Physicians Plan accepted the benefits of the contract, had full knowledge of the situation, and acted in a manner that confirms its intention to adopt the contract as its own, Physicians Plan ratified the contract and is now the equivalent of a signatory. It may, therefore, avail itself of the arbitration clause.

Clinical Solutions argues finally that the arbitration clause is somehow contradicted by the clause of the joint venture agreement pursuant to which both parties consented to personal jurisdiction in this and other Tennessee-based courts "for any lawsuit filed there against any party to this Agreement by any other party to this Agreement concerning the joint venture or any matter arising from or relating to this Agreement." (Docket No. 12-1 at 5.) There is no contradiction, however, in agreeing that any dispute between the parties must be arbitrated, but that if a dispute ends up in court, jurisdiction is proper in Tennessee. The very existence of this proceeding is a reminder that many disputes find themselves in front of both the courts and an arbitrator before they are conclusively resolved.

### D. Dismissal versus Staying Proceedings

Because Physicians Plan is a party contemplated by the scope of the arbitration clause, and because Clinical Solutions' challenge to the enforceability of the clause is more properly directed at the underlying agreement as a whole, the court is precluded from considering the claims between the two entities. Physicians Plan asks the court to dismiss the claims against it rather than simply staying the case in favor of allowing arbitration to proceed. Citing *Dearmon v. Bestway Rent-To-Own*, No. 3:14-CV-0900, 2014 WL 1961911, at *1–2 (M.D. Tenn. May 15,

9

2014), Physicians Plan concedes that this court has previously held that the FAA does not clearly mandate which of the two options the court should pursue, but Physicians Plan suggests that dismissal is appropriate because Clinical Solutions' claims "so clearly fall within the scope of an arbitration clause that there will be no question as to their arbitrability." *Id.* at *2 (citing *Tenn. Imps., Inc. v. Filippi*, 745 F. Supp. 1314, 1324 (M.D. Tenn. 1990)).

This court has recognized the respective advantages of both dismissing claims and merely staying proceedings. For example, outright dismissal allows the court to "prevent unpursued claims from languishing unnecessarily and indefinitely on the court's docket," whereas a stay may, where necessary, permit a court to grant such "preliminary injunctive relief necessary to ensure that the arbitration process remains a meaningful one." *Filippi*, 745 F. Supp. at 1324. In this particular instance, however, there appears to be little benefit to maintaining jurisdiction while the arbitration proceeds. The court will therefore dismiss the claims against Physicians Plan, as well as Physicians Plan's counterclaim, pending arbitration.

For his part, Grimm has not sought to enforce the arbitration clause on his own behalf or have the claims against him dismissed pursuant to the agreement. *But see Fellowship v. Chesapeake Energy Corp.*, No. 4:15CV02275, 2016 WL 5661607, at *3 (N.D. Ohio Sept. 29, 2016) (discussing enforceability of arbitration agreements by nonparties). Accordingly the court will proceed to consider the claims against him in his individual capacity.

## II. Motion to Amend

Clinical Solutions seeks leave to file an Amended Complaint containing a number of minor alterations and additions to the language of the Complaint, as well as adding two counts: an "action to pierce the corporate veil" and an intentional interference of contract claim against Grimm. The defendants oppose the amendments as futile.

## A. Legal Standard

A motion for leave to amend a pleading under Rule 15(a)(2) should be freely granted where justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, a motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman*, 371 U.S. at 182). The defendants have not identified any bad faith, undue delay, or undue prejudice that would prevent the court from granting Clinical Solutions' motion, other than a purely conclusory allegation that Clinical Solutions seeks to increase the delay and expense associated with the litigation. The defendants primarily argue instead that the motion should be denied because it is futile. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 382–83 (6th Cir. 1993)).

## B. Additions/Alterations to Body of Complaint and Pre-existing Counts

Clinical Solutions has proposed a number of changes that appear to be either minor clarifications or additions directed at remedying defects identified by Grimm in his motion to dismiss. For example, Grimm has urged the court to dismiss Clinical Solution's claims for fraudulent or negligent misrepresentation because Clinical Solutions failed to allege that Grimm made a promise of future action with no intent to perform. *See Roopchan v. ADT Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 653 (E.D. Tenn. 2011) ("To prevail on a claim of promissory fraud, the plaintiff must establish '(1) an intentional misrepresentation of a fact material to the transaction;

(2) knowledge of the statement's falsity or utter disregard for its truth; (3) an injury caused by reasonable reliance on the statement; and (4) a promise of future action with no present intent to perform.'") (quoting *Houghland v. Houghland*, No. M2005–01770–COA–R3–CV, 2006 WL 2080078, at *3 (Tenn. Ct. App. July 26, 2006)). The proposed Amended Complaint, however, expressly alleges that Grimm had no intent to follow through with his promise to use Clinical Solutions as an exclusive vendor. (Docket No. 23-1 ¶ 46.)

The defendants argue jointly that these amendments would be futile, focusing primarily on the fact that they do nothing to defeat the enforceability of the arbitration clause. That argument is persuasive insofar as it pertains to claims against Physicians Plan. Grimm, however, has not asserted any rights under the arbitration clause. The proposed amendments are only futile as they apply to Grimm, then, insofar as they fail to address Grimm's arguments under Fed. R. Civ. P. 12(b)(6). Because Clinical Solutions' amendments related to his original causes of action are directly responsive to Grimm's arguments, the court will grant leave to amend with regard to those portions of the complaint. Grimm, however, will be afforded the opportunity to seek dismissal based on the revised language.

### C. Count for Intentional Interference with Contract

Grimm argues next that Clinical Solutions should not be permitted to amend its complaint to add a cause of action for intentional interference with contract (Docket No. 23-1, ¶¶ 63–69 (Count VI)), because, under Tennessee law, "a corporate director, officer, or employee is generally not liable for interference with the corporation's contracts." *Cambio Health Sols., LLC v. Reardon*, 213 S.W.3d 785, 790 (Tenn. 2006) (citing *Forrester v. Stockstill*, 869 S.W.2d 328, 333 (Tenn. 1994)). Tennessee courts, however, have recognized that this shield extends only insofar as the corporate agent "acts within the general range of his authority, and his actions are

12

substantially motivated by an intent to further the interest of the corporation." *Forrester*, 869 S.W.2d at 334–35. According to Clinical Solutions' Complaint and proposed Amended Complaint, however, after Physicians Plan abandoned its contract with Clinical Solutions, Grimm himself went on to form a new joint venture, performing comparable services, with a third party. (Docket Nos. 1 & 23-1 ¶¶ 29–30.) If Grimm induced a breach by Physicians Plan so that he could personally pursue a new, competing venture based on the same book of clients that Physicians Plan would have been serving, Grimm was not acting in the interest of Physicians Plan. Taking the facts pled by Clinical Solutions as true, then, addition of an intentional interference claim is not futile.

### D. "Action to Pierce the Corporate Veil"

Finally, Grimm argues that Clinical Solutions should not be permitted to amend its complaint to allege a claim for piercing the corporate veil, because Clinical Solutions' argument for piercing the corporate veil sounds in fraud, and Clinical Solutions has not pled that fraud with sufficient particularity as required by Fed. R. Civ. P. 9(b). *See Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir.2006) ("When a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to Fed. R. Civ. P. 9(b).") (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002)).

That issue aside, however, the court must first address the fact that Grimm's proposed Amended Complaint appears to posit an "Action to Pierce the Corporate Veil" as a standalone cause of action, separate and apart from his other claims. Piercing the corporate veil is not a cause of action, but merely a mechanism by which a court may "attribute the actions of a corporation to its shareholders." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 88 (Tenn. 2010).

Piercing the veil may expand *who* is liable for a particular act, but that liability must still arise out of a separate, underlying cause of action. *See, e.g., Hodak v. Madison Capital Mgmt., LLC*, 348 F. App'x 83, 94 (6th Cir. 2009) (noting that piercing the corporate veil is not a cause of action); *Brennan v. Nat'l Action Fin. Servs., Inc.*, No. 12-CV-10551, 2012 WL 3888218, at *3 (E.D. Mich. Sept. 7, 2012) ("It is well established that piercing the corporate veil is not itself a cause of action."); 1 Fletcher Cyclopedia of the Law of Private Corporations § 41.10 (Perm. ed. 1999) ("A finding of fact of alter ego, standing alone, creates no cause of action. . . . An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action such as a tort or breach of contract."). The proposed Amended Complaint does not tie the count based on piercing the corporate veil to any particular theory of recovery, merely the "debts of Physicians Plan." (Docket No. 23-1 ¶ 62.) Read in the context of the proposed Amended Complaint as a whole, however, it is clear to the court that Clinical Solutions intends to plead the allegation that, through piercing the corporate veil, Grimm should be held personally liable for the claims that Clinical Solutions has pled against Physicians Plan.

Under Tennessee law, "[t]he laws of the jurisdiction under which a foreign LLC is formed govern . . . the liability of its members and representatives . . . ." Tenn. Code Ann. § 48-249-901. The court will therefore look to South Carolina law to determine what Clinical Solutions must ultimately establish if it is to pierce the corporate veil. The South Carolina Supreme Court has cautioned that "the doctrine of piercing the corporate veil is not to be applied without substantial reflection" and should only be invoked "when the notion of legal entity is used to protect fraud, justify wrong, or defeat public policy." *Drury Dev. Corp. v. Found. Ins. Co.*, 668 S.E.2d 798, 800 (S.C. 2008) (quoting *Sturkie v. Sifly*, 313 S.E.2d 316, 318 (S.C. Ct. App. 1984)). Nevertheless, South Carolina law permits a plaintiff to pierce the corporate veil

under an "alter ego" theory by establishing "(1) total domination and control of one entity by another and (2) inequitable consequences caused thereby." *Oskin v. Johnson*, 735 S.E.2d 459, 465 (S.C. 2012) (citing *Colleton Cty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cty.*, 638 S.E.2d 685, 692 (S.C. 2006)).

Clinical Solutions expressly relies on allegations of fraud to argue that the veil should be pierced in this case. (Docket No. 23-1 ¶¶ 58-59.) The defendants' invocation of the heightened pleading requirement of Rule 9(b), therefore, is well taken. The Sixth Circuit has explained the overarching purpose of Rule 9(b) as follows:

> [Rule 9(b)] should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules. Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: "to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading."

*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008) (citations omitted). "So long as a [plaintiff] pleads sufficient detail – in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud – to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.* "Where a complaint alleges 'a complex and far-reaching fraudulent scheme,' then that scheme must be pleaded with particularity and the complaint must also 'provide[] examples of specific' fraudulent conduct that are 'representative samples' of the scheme." *United States ex rel. Marlar v. BWXT Y–12, L.L.C.*, 525 F.3d 439, 444–45 (6th Cir. 2008) (quoting *United States ex rel Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)).

Clinical Solutions, though, does not allege a far-reaching fraudulent scheme requiring deep explanation or a laundry list of examples. Clinical Solutions alleges, rather simply, that Grimm – hard-pressed for money from an associate in an earlier, failed business – made false

15

promises of an exclusive joint venture with Clinical Solutions, formed a dummy LLC for the purpose of entering into that joint venture, and then, after obtaining $100,000 in capital based on his promise of exclusivity, abandoned the joint venture to do business with someone else. (Docket No. 23-1 ¶¶ 14–17, 24, 26, 29–31, 46–48, 57–62.) The defendants have not identified any way in which these allegations have failed to put them on notice of the allegations against them. Accordingly, Clinical Solutions' allegations are sufficiently particularized and its proposed amendment is not futile.

As the court has explained, however, any liability of Grimm premised on piercing the corporate veil must be founded on some identifiable, separate cause of action against Physicians Plan, and Grimm's allegations against Physicians Plan should be considered in the first instance by an arbitrator, not the court. As the Sixth Circuit has observed, it undermines the general presumption in favor of arbitration if a plaintiff "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint, or signatory parties in their individual capacities only." *Arnold v. Arnold Corp.-Printed Commc'ns For Bus.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (citation omitted). Therefore, the court will allow Clinical Solutions to file its proposed Amended Complaint, but will stay the consideration of any claims premised solely on piercing the corporate veil until the completion of arbitration and the determination of the extent, if any, of Physicians Plan's underlying liability.

### III. Grimm's Motion to Dismiss

The filing of an Amended Complaint under these circumstances generally moots a pending motion to dismiss. *See Ware v. C.R. Bard*, Inc., 2007 WL 2463286, *2 (E.D. Tenn. Aug. 28, 2007); *ABB, Inc. v. Reed City Power Line Supply Co.*, 2007 WL 2713731, *1 (W.D. Mich. Sept. 18, 2007) (collecting cases). Only in the rare case where the amended complaint is

"substantially identical to the original complaint" may a properly filed amended complaint be insufficient to moot the motion to dismiss. *Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*, 2009 WL 3029661, *4 (S.D. Ohio Sept. 16, 2009). While many of Clinical Solutions' alterations are minor, they are in at least some instances directly targeted at deficiencies raised by the Motion to Dismiss. Accordingly, Grimm's motion will be dismissed without prejudice to filing a renewed motion to dismiss in light of the revised Complaint.

## CONCLUSION

For the foregoing reasons, Physicians Plan's motion will be granted, and all claims against Physicians Plan will be dismissed. Clinical Solutions' motion will be granted. Grimm's motion will be denied without prejudice as moot. The court's consideration of Clinical Solutions' claims premised on piercing the corporate veil will be stayed pending the result of arbitration, but its consideration of all claims against Grimm directly in his personal capacity will proceed.

An appropriate order will issue.

_____
ALETA A. TRAUGER
United States District Judge